1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                      FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    VINETTA M. HARRIS,                          No.  2:14-cv-02092 AC

10                  Plaintiff,

11           v.                                  ORDER

12   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,,
13
                     Defendant.
14

15

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her application for supplemental security income ("SSI") under Title

18   XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f.[1]   For the reasons that

19   follow, plaintiff's motion for summary judgment will be DENIED and defendant's cross-motion

20   for summary judgment will be GRANTED.

21                          I.   PROCEDURAL BACKGROUND

22          Plaintiff initially applied for Disability Insurance Benefits ("DIB") and Supplemental

23   Security income ("SSI") on February 16, 2010, alleging her disability began May 15, 2006.

24

25   _____

26   [1] SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept.
     of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003)( Title
27   XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for
     aged, blind, or disabled individuals, including children, whose income and assets fall below
28   specified levels).

1

Administrative Record ("AR")[2] at 55 (ECF No. 12-4 at 5) (Decision).  The claim was initially denied on May 18, 2010, and on reconsideration on September 13, 2010.  Id.  Plaintiff then filed a request for hearing on October 11, 2010, id., pursuant to 20 CFR 415.1429, and appeared at the hearing held on July 20, 2011 before Administrative Law Judge ("ALJ") William C. Thompson.  Id.  At that time plaintiff changed her alleged disability onset date to February 16, 2010, which her attorney explained would result in the dismissal of her DIB application.  Id.

On September 9, 2011, ALJ Thompson found plaintiff "not disabled" and plaintiff requested review of that decision by the Appeals Council.  Id.  On June 27, 2012, the Appeals Council vacated the hearing decision and remanded the case to a new ALJ, Robert P. Wenten, for further adjudication specifically including consideration of the claimant's knee impairment and her reported used of a cane and their vocational consequences.  Id.

On March 20, 2013, the plaintiff, plaintiff's attorney, plaintiff's husband Joey Harris, and IVE Jose L. Chaparro were present for and testified at the hearing held by Judge Wenten.  Id.  On April 27, 2013, Judge Wenten issued his decision finding that plaintiff had not proven disability.  AR 81 (ECF No. 12-4 at 31).

On May 31, 2013, plaintiff requested review of the Hearing Decision, AR 48-51 (ECF No. 12-3 at 49-52), which request was denied on July 14, 2014.  AR 1-7 (ECF No. 12-3 at 2-8).  Plaintiff filed her Complaint in this court on September 9, 2014.  ECF No. 1.  The parties consented to the jurisdiction of the Magistrate Judge.  ECF Nos. 3 (plaintiff) and 9 (defendant).  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF No. 13 (plaintiff's summary judgment motion dated July 27, 2015), ECF No.  14 (Commissioner's cross-motion for summary judgment dated August 20, 2015) and ECF No. 15 (plaintiff's reply memorandum).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1976 and thus was under fifty years of age at all relevant times.  ECF No. 13 at 4:24-25.  She has a GED and has taken college courses.  Id. at 25 -26.  She can

---

[2] The Administrative Record, comprising 1,176 pages was filed in thirteen (13) parts found at ECF No. 12-4 – 12-16.

2

1  communicate in English as demonstrated in the transcript of her testimony at the hearing.  AR 93

2  et seq. (ECF 12-4 at 43 et seq.).

3  III.  LEGAL STANDARDS

4  The Commissioner's decision that a plaintiff is not disabled will be upheld "if it is

5  supported by substantial evidence and if the Commissioner applied the correct legal standards."

6  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "The findings of the

7  Secretary as to any fact, if supported by substantial evidence, shall be conclusive."  Andrews v.

8  Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

9  Substantial evidence is "more than a mere scintilla, [but] may be less than a

10  preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Substantial evidence

11  "means such relevant evidence as a reasonable mind might accept as adequate to support a

12  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) ( internal quotation marks

13  omitted).  "While inferences from the record can constitute substantial evidence, only those

14  'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066

15  (9th Cir. 2006) (citation omitted).  Although this court cannot substitute its discretion for that of

16  the Commissioner, the court nonetheless must review the record as a whole, "weighing both the

17  evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."

18  Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d

19  993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that

20  detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of

21  supporting evidence.").

22  "The ALJ is responsible for determining credibility, resolving conflicts in medical

23  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

24  2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which

25  supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart, 278

26  F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ

27  in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn v.

28  Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)

1  ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that

2  the ALJ did not discuss").

3        The court will not reverse the Commissioner's decision if it is based on harmless error,

4  which exists only when it is "clear from the record that an 'ALJ's error was inconsequential to the

5  ultimate nondisability determination.'" Robbins v. Social Security Administration, 466 F.3d 880,

6  885 (9th Cir. 2005) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-1056 (9th Cir. 2006));

7  see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

8                        IV.        RELEVANT LAW

9        Disability Insurance Benefits and Supplemental Security Income are available for every

10  eligible individual who is "disabled."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

11  Commissioner uses a five-step sequential evaluation process to determine whether an applicant is

12  disabled and entitled to benefits.  20 C.F.R.  §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v.

13  Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to

14  determine disability" under Title II and Title XVI.  The following summarizes the sequential

15  evaluation:

16              Step one: Is the claimant engaging in substantial gainful activity?  If
                so, the claimant is not disabled.  If not, proceed to step two.

17  20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

18              Step two: Does the claimant have a "severe" impairment?  If so,
                proceed to step three.  If not, the claimant is not disabled.

19  Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

20

21              Step three: Does the claimant's impairment or combination of
                impairments meet or equal an impairment listed in 20 C.F.R., Pt.
                404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not,

22              proceed to step four.

23  Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

24              Step four: Does the claimant's residual functional capacity make
                him capable of performing his past work?  If so, the claimant is not

25              disabled.  If not, proceed to step five.

26  Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

27              Step five: Does the claimant have the residual functional capacity
                perform any other work?  If so, the claimant is not disabled.  If not,

28              the claimant is disabled.

4

1   Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

2          The plaintiff bears the burden of proof in the first four steps of the sequential evaluation

3   process.  20 C.F.R.  §§ 404.1512(a)("In general, you have to prove to us that you are blind or

4   disabled"), 20 C.F.R. § 416.912(a)(same).  However, "[a]t the fifth step of the sequential analysis,

5   the burden shifts to the Commissioner to demonstrate that the plaintiff is not disabled and can

6   engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698

7   F.3d 1153, 1161 (9th Cir. 2012).

8                           V.      THE ALJ's FINDINGS

9          The ALJ made the following findings:

10

11          1.  The claimant met the insured status requirements of the Social
                Security Act through December 31, 2008. […]

12          2.  [Step One]  The claimant has not engaged in substantial gainful
                activity since February 16, 2010, the amended alleged onset
13              date (20 CFR 404.1571 et seq. and 416.971 et seq.).  […]

14          3.  [Step Two]  The claimant has the following severe impairments:
                swelling and possible bursitis of the bilateral knees; asthma;
15              obesity; and bipolar disorder (20 CFR 404.1520(c) and
                416.920(c)).  […]
16
            4.  [Step Three]   The claimant does not have an impairment or
17              combination of impairments that meets or medically equals the
                severity of one of the listed impairments in 20 CFR Part 404,
18              Subpart P., Appendix 1 (20 CFR 404.1520(d), 404.1525,
                404.1526, 416.920(d), 416.925 and 416.926).  […]
19
            5.  [Preparation  for  Step  4  (Residual  Functional  Capacity
20              ("RFC"))]  The claimant has the residual functional capacity to
                perform a limited range of light work as defined in 20 CFR
21              404.1567(b) and 416.967(b).  She lift or carry up to 20 pounds
                occasionally and 10 pounds frequently.  She can stand and walk
22              in combination for a total of 6 hours in an 8-hour workday and
                sit up to six hours.  She can occasionally climb stairs, but not
23              ladders, ropes or scaffolding, and should not be exposed to
                heights or hazardous machinery.  She should not be exposed to
24              extreme temperatures, excessive dust, fumes, smoke or other
                respiratory irritants.  She is limited to jobs involving simple
25              instructions, and limited to restricted contact with both the
                public and coworkers.  She work in the presence of others but
26              should not be part of a work team or a cooperative work
                process. […]
27
            6.  [Step Four]  The claimant is unable to perform any past relevant
28              work (20 CFR 404.1454 and 416.965).  […]

7.  [Step Five]  The claimant was born on May 28, 1976 and was 33 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date of February 16, 2010 (20 CFR 404.1563 and 416.963).

8.   [Step Five, continued]  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). […]

9.  [Step Five, continued]   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the plaintiff is "not disabled," whether or not the plaintiff has transferable job skills (See SSR 92-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. [Step Five, continued]   Considering the plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (20 C.F.R. 416.969 and 416.969(a)).  […]

11. The claimant has not adequately proven she has been under a disability, as defined in the Social Security Act, from February 16, 2010 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

AR 58-81 (ECF No. 12-4 at 8-31) (excerpted).

## VI. ANALYSIS

Plaintiff contends that the ALJ committed legal error by rejecting treating physician Dr. Tanson's "assessment" that plaintiff required supplemental oxygen, and that this error renders invalid the ALJ's findings regarding plaintiff's credibility and her residual functional capacity. ECF No. 13 at 12.  Plaintiff's brief affirmatively indicates both that the ALJ rejected a medical opinion provided by plaintiff's treating physician, e.g. ECF No. 13 at 12 ("An ALJ Must Reasonably Evaluate a Treating Source's Opinion"), and that the ALJ improperly failed to consider a doctor's prescription, id. at 14 ("Dr. Tanson Prescribed Oxygen" and "ALJ Wenten Did Not Give Legally Sufficient Reasons for Rejecting Dr. Tanson's Prescription of Oxygen"). Neither representation, however, is accurate.  The record before the ALJ included neither a medical opinion from Dr. Tanson, nor a prescription for oxygen from Dr. Tanson or anyone else. There was no error.

A.   The Medical Record Regarding Plaintiff's Asthma Treatment

The ALJ accurately summarizes the record regarding plaintiff's history of treatment for asthma and respiratory difficulties from May 2005 through April 2012. AR 71-72 (ECF No. 12-4 at 21-22). Throughout this timeframe, plaintiff's condition waxed and waned. The record reflects complaints and emergency room visits alternating with exams that demonstrated normal respiration, clear lungs, and reports of improvement. The effect of plaintiff's smoking on her asthma was repeatedly discussed. Id. The ALJ also reviewed the evidence of plaintiff's hospitalization for four days in April 2012, when she was admitted to San Joaquin General Hospital for shortness of breath and was diagnosed with asthma exacerbation secondary to bronchitis. During her inpatient treatment, plaintiff's chest x-ray was negative and her oxygen intake level was measured at 96% on "room air." Id. at 72 (ECF No. 12-4 at 22). On discharge plaintiff was counseled about smoking cessation, and she was permitted to return to school and regular P.E. activities a few days later. Id. The court's independent review of the hospital records reflects that "slight bilateral expiratory wheezing" was identified during the hospitalization, and that medications were prescribed. AR 1152 (ECF No. 12-16 at 7). The discharge summary notes that an outpatient sleep study was recommended and medications were continued, id. at 8-9, but there is no recommendation or prescription for oxygen.[3]

The record reflects that plaintiff saw Dr. Tanson five times between October 2011 and May 2012. AR 1171-74 (ECF No. 12-16 at 26-29). Prior to plaintiff's April 2012 hospitalization, Dr. Tanson's progress notes do not mention oxygen. On April 27, 2012, following her discharge, plaintiff reported having been treated at the hospital for COPD, pneumonia, bronchitis and asthma.[4] AR 1172 (ECF No. 12-16 at 27). Dr. Tanson's notes indicate that the patient was to be contacted to "see whether she needs oxygen on an outpatient basis." Id. At her next visit with Dr. Tanson, on May 21, 2012, plaintiff reported that she had been "set up" on oxygen three weeks previously. AR 1171 (ECF No. 12-16 at 26). Dr. Tanson's

---

[3] A final PA note indicates that plaintiff "[r]ecently had a sleep study where she is pending O2 use at night." AR 1156 (ECF 12-16 at 11). The medical record does not include the results of any sleep study.

[4] She also sought treatment for blood clots in her legs.

1   notes state that plaintiff is "using oxygen on [a] regular basis," and until he has her medical

2   records to review she should "continue oxygen."  AR 1171 (ECF No. 12-16 at 26).  The statement

3   of her condition includes "chronic hypoxia on oxygen."  There is no further reporting from Dr.

4   Tanson in the record.

5       B.  The ALJ Did Not Reject An Opinion From Dr. Tanson

6           Plaintiff invokes the legal standards that apply to an ALJ's rejection of an uncontroverted

7   opinion from a claimant's treating physician.  ECF No. 13 at 12-13.  Dr. Tanson, however, never

8   rendered an opinion regarding the impact of plaintiff's asthma on her functioning.  Neither did he

9   express an opinion regarding plaintiff's alleged need for constant oxygen.

10          Treatment notes (as opposed to formal functional assessments or other opinion reports)

11  may constitute a "medical opinion" if they contain statements that reflect judgments about the

12  nature and severity of a claimant's impairment(s), including symptoms, diagnosis and prognosis,

13  functioning, and medically indicated restrictions.  See 20 C.F.R. § 404.1527(a)(2); Marsh v.

14  Colvin, 792 F.3d 1170, 1172 n. 1 (9th Cir. 2015).  Dr. Tanson's progress notes do not contain any

15  judgments about plaintiff's asserted need for oxygen.  Rather, they reflect plaintiff's

16  (uncorroborated) report to Dr. Tanson that she had been "set up" on oxygen.  Dr. Tanson merely

17  documented the fact of plaintiff's oxygen use, he did not order it.  His May 21, 2012 note that

18  plaintiff should "continue oxygen" *until he had obtained her records* is no more than a direction

19  that plaintiff maintain the status quo until Dr. Tanson was in a position to make a judgment

20  himself.  The record does not reflect that he ever did so.

21          The ALJ's failure to identify and give significant weight to Dr. Tanson's notes regarding

22  oxygen does not constitute rejection of a treating physician's "opinion," because there was no

23  opinion.  The authorities that plaintiff cites in this regard, including Lester v. Chater, 81 F.3d 821,

24  830 (9th Cir. 1995) (requiring "clear and convincing reasons" for rejecting uncontroverted opinion

25  of treating physician), are inapposite.  There was no error involving the rejection of medical

26  opinion evidence.

27  ////

28  ////

8

1    C.   The ALJ Did Not Fail To Consider A Prescription Issued By Dr. Tanson

2          The medical record is devoid of any prescription for oxygen.  Dr. Tanson did not prescribe

3    oxygen, and his treatment notes cannot reasonably be construed as a prescription for the same

4    reasons that they do not constitute an "opinion" that plaintiff required oxygen.  Plaintiff insists

5    that Dr. Tanson's May 21, 2012 "assessment . . . that oxygen was needed for chronic hypoxia,"

6    AR 1171, constituted a "prescription."  ECF No. 13 at 15:2-6.  The referenced treatment note

7    does not reflect a conclusion that plaintiff required oxygen for chronic hypoxia, however, it

8    merely documented plaintiff's reported use of oxygen.[5]  Because there was no evidence that

9    oxygen had been prescribed, the ALJ cannot have erred by failing to account for prescribed

10   oxygen in the RFC.

11   D.   The ALJ Committed No Error In Evaluating Plaintiff's Credibility

12         Plaintiff appeared at the hearing before the ALJ wearing an oxygen tank, and testified that

13   she used oxygen 24 hours per day and had been doing so since she was released from the hospital

14   in 2012.  See AR 74 (ECF No. 12-4 at 24).  The ALJ found plaintiff's testimony regarding her

15   need for oxygen (among other things) not to be credible, on grounds that the medical record

16   contained no prescription for oxygen or indication that she had a breathing impairment so severe

17   that oxygen would be required.  Id.  The ALJ also identified numerous inconsistencies in

18   plaintiff's reports to medical providers and her testimony regarding her respiratory problems and

19   her smoking.  Id.  Overall, the ALJ found plaintiff's testimony about her symptoms not to be

20   credible because it was inconsistent with the longitudinal treatment history and not supported by

21   the treatment evidence.  AR 73 (ECF No. 12-4 at 23).

22         If an ALJ finds that a claimant's testimony as to the severity of her impairments is

23   unreliable, the ALJ must make a credibility determination with findings sufficiently specific to

24   permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.

25   See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  The ALJ may use the

26

27   _____

[5] The treatment note says "chronic hypoxia on oxygen," not "oxygen *needed* for chronic hypoxia"
as plaintiff's brief suggests.  See AR 1771 (ECF No. 12-16 at 26).  The note is descriptive, not
28   prescriptive.

1    ordinary techniques of credibility evaluation.  See Turner v. Commissioner, 613 F.3d 1217, 1224

2    n.3 (9th Cir. 2010).  He may consider the following factors, among others: the claimant's

3    reputation for truthfulness, inconsistencies either in the claimant's testimony or between her

4    testimony and her conduct, the claimant's daily activities, her work record, and testimony from

5    physicians and third parties concerning the nature, severity, and effect of the symptoms of which

6    claimant complains.  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  Although the

7    absence of objective medical evidence is not, standing alone, sufficient to support a negative

8    credibility determination, when coupled with conflicts between testimony and conduct and/or

9    internal contradictions in plaintiff's representations, it provides a valid basis for rejecting the

10   claimant's testimony.  Robbins v. Social Security Administration, 466 F.3d 880, 883-884 (9th

11   Cir. 2006).  If the ALJ's credibility finding is supported by substantial evidence in the record, we

12   may not engage in second-guessing.  See Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir.

13   1999).

14        Here the ALJ gave specific, clear and convincing reasons for discounting plaintiff's

15   testimony.  The ALJ identified extensive inconsistencies in plaintiff's testimony, and between her

16   testimony and the longitudinal medical history, both regarding her asthma and oxygen use and

17   regarding the severity of other reported symptoms that are not at issue here.  AR 72-76 (ECF No.

18   12-4 at 22-26).  The ALJ also properly considered plaintiff's "unexplained or inadequately

19   explained failure to . . . follow a prescribed course of treatment," e.g. smoking cessation.  See

20   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Because the ALJ's credibility finding is

21   supported by substantial evidence, there was no error.

22        E.   Substantial Evidence Supports the Residual Functioning Capacity Findings

23        In determining plaintiff's RFC, the ALJ rejected plaintiff's claim that she needed to be on

24   oxygen at all times.  He carefully reviewed the medical records regarding her treatment for

25   asthma and found that even if plaintiff was using supplemental oxygen at the time of the hearing,

26   it was not medically required.  The ALJ then concluded that:

27              [C]ontrary to her testimony and allegations, the claimant has only
               occasional exacerbation of her symptoms, and she continues to
28             smoke against medical advice. The residual functional capacity set

                                             10

1    forth herein incorporates adequate precautions in regard to her
     asthma.

2

3    AR 72 (ECF No. 12-4 at 22).  Plaintiff challenges this finding.

4         The court has already determined that the ALJ did not err in rejecting plaintiff's testimony

5    regarding her need for oxygen, or in failing to treat Dr. Tanson's treatment notes as a prescription

6    for "24/7" oxygen use or an opinion that such oxygen use was medically necessary.  Plaintiff's

7    contention that the ALJ overlooked significant evidence of supplemental oxygen dependence fails

8    for the reasons already explained.  The ALJ's assessment of plaintiff's RFC is based on

9    substantial evidence, and therefore may not be disturbed on judicial review.

10        F.   The Court Need Not Address Plaintiff's Additional Arguments

11        Plaintiff raises a number of issues regarding the ALJ's consideration of Vocational Expert

12   testimony and application of Social Security Ruling (SSR) 00-4p.  These issues are presented in

13   the context of harmless error analysis.  ECF No. 13 at 17-21 ("ALJ Wenten's Errors Were

14   Harmful").  Because the court has found no error, there is no need to address these matters.

15                          VII.  CONCLUSION

16        For the reasons set forth above, IT IS HEREBY ORDERED as follows:

17   1.  Plaintiff's motion for summary judgment, ECF No. 13, is DENIED;

18   2.  The Commissioner's cross-motion for summary judgment, ECF No. 14, is GRANTED.

19   3.  The Clerk of the Court shall enter judgment for defendant and close the case.

20   DATED:  September 9, 2016.

21

22   _____

23   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                              11